IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TUNE HUNTER INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | Case No. 2:09-CV-00148-TJW |
| SAMSUNG TELECOMMUNICATIONS | § | |
| AMERICA, LLC; APPLE INC; GRACENOTE | § | |
| ENTERTAINMENT LTD.; AMAZON.COM, | § | |
| INC.; NAPSTER, LLC; MOTOROLA, INC.; | § | |
| GRACENOTE, INC.; CELLCO | § | **JURY TRIAL DEMANDED** |
| PARTNERSHIP d/b/a VERIZON WIRELESS; | § | |
| LG ELECTRONICS USA, INC.; AT&T | § | |
| MOBILITY LLC; and PANTECH WIRELESS, | § | |
| INC., | § | |
| | § | |
| *Defendants.* | § | |

**TUNE HUNTER'S OPPOSITION TO GRACENOTE'S AMENDED MOTION TO
DISMISS (AND AT&T'S RULE 12(b)(6) MOTION TO DISMISS, NAPSTER'S MOTION
TO DISMISS, SAMSUNG'S MOTION TO DISMISS AND APPLE'S MOTION TO
DISMISS)**

John T. Polasek
C. Dale Quisenberry
Jeffrey S. David
S. Calvin Capshaw
Elizabeth L. DeRieux
Robert Christopher Bunt
Charles L. Ainsworth

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................................1

II.   BACKGROUND .................................................................................................2

III.  ARGUMENT ......................................................................................................5

      A.    Tune Hunter's Complaint Meets the Requisite Standards
            And Forms of the Federal Rules of Civil Procedure ................................5

            1.    Motions To Dismiss For Failure To State A Claim
                  Are Viewed With Disfavor And Rarely Granted.........................5

            2.    Tune Hunter's Complaint Complies With The Pleading
                  Standard For Patent Cases Under Rule 8 And Form 18 .............7

            3.    Gracenote's Reliance on Cases That Apply A Heightened Pleading
                  Standard Are Not Applicable Since This Court Has Patent Rules ...........10

      B.    Tune Hunter Has Meritorious Claims of Joint Direct Infringement.....................11

            1.    Gracenote's Dispute That Tune Hunter Will Not Be Able
                  To Prove Joint Direct Infringement Is Incorrect........................11

            2.    *BMC* and *Muniauction* Only Apply to the "Use" Prong of §271(a)..........13

            3.    Gracenote Understands That Tune Hunter Alleges Joint
                  Direct Infringement, But Disagrees That Tune Hunter Will
                  Prevail On The Evidence ...........................................................14

      C.    Tune Hunter Also Has Claims of Direct Infringement Under § 271
            That Do Not Require Joint Direct Infringement....................................15

            1.    There Is Direct Infringement Under 35 U.S.C. 271(g) ............................15

            2.    Standard for Direct Infringement Under § 271(g) ....................................15

IV.   CONCLUSION....................................................................................................17

# I. INTRODUCTION[1]

Following well-established practice in this district, Tune Hunter's First Amended Complaint ("FAC") conforms to F.R.C.P. 84 and tracks Form 18 (Complaint for Patent Infringement) of the Appendix to the Federal Rules of Civil Procedure. Yet Gracenote seeks the drastic remedy of dismissal of Tune Hunter's FAC, complaining that Tune Hunter's allegations must be more specific. Gracenote does not contend it lacks fair notice but instead seeks the details of Tune Hunter's infringement contentions and proof well before such contentions and proof are due.

First, Gracenote is wrong in assuming that this is only a joint direct infringement case. Moreover Gracenote does not, because it cannot, allege it does not have fair notice of Tune Hunter's infringement claim. Indeed, Gracenote has been aware of the Tune Hunter patent since at least 2007 and communicated with Tune Hunter on multiple occasions prior to this suit. Furthermore, Gracenote will be given more detailed infringement contentions in Tune Hunter's Local P.R. 3-1 infringement contentions disclosed early in these proceedings.

This is not just a case of joint direct infringement under 35 U.S.C. § 271. Tune Hunter has evidence that a single entity has directly infringed the Tune Hunter patent by using the claimed method under § 271(a).[2] Gracenote and the other defendants have committed other acts of direct infringement under § 271(a) and (g).[3] As further (non-limiting) examples, AT&T has directly infringed the patent by offering the claimed method for sale under § 271(a), and Apple directly infringes under § 271(g). Gracenote has induced these direct infringements. Moreover, Tune

---

1      Tune Hunter fully incorporates by reference its Opposition to LG's Motion to Dismiss.

2      Gracenote's conclusory argument that the "service provider" and "consumer" are two distinct actors <u>as a matter of law</u> (Gracenote Motion, p.9) is simply inaccurate.

3      Tune Hunter is not contending infringement under § 271(f), which Gracenote would have learned from Tune Hunter's P.R. 3-1 disclosures to be provided in the future.

Hunter has a claim under the *BMC* and *Muniauction* joint infringement theory based on facts presently known to Tune Hunter, and likely to be further supported once Gracenote and the other defendants provide discovery in this action.

For all of these reasons, Gracenote's motion should be denied.[4]

## II.    BACKGROUND

The patent-in-suit, U.S. Patent 6,941,275, is directed to a music identification system. The patent has 2 independent claims, the first directed to a process of identifying music that results in the receipt of various data from the identification and the second directed to a method for purchasing music that has been identified and receiving the music item. As a brief example of the methods, claim 1 generally includes the step of "providing" a portable device[5] used to record and transmit musical segments and a "service provider" that "provides" a music identification device to identify the musical segment.[6] The claim recites that after the musical segment of interest is recorded and transmitted to the music identification device, it is then analyzed, a match identified, and details relevant to the match are transmitted to the consumer.

Gracenote has a music identification service that Tune Hunter contends infringes its patent. In brief, there are two pieces to the service: the "backend" music identifying system of Gracenote and the "front end" system on a cellular handset that records and transmits a musical segment. Both pieces of the system are proprietary to Gracenote. Both communicate with each other via the AT&T

---

4        It is noted that Gracenote has taken an "all or nothing" approach with its motion. It did not move for a more definite statement.

5        Step (a) in claim 1 recites: providing a portable communication device <u>to be used</u> by a consumer. Further steps of claim 1 specify the consumer "recording" and "transmitting" a music segment using the device that was provided. It is rather clear that the device performs the actual recording and transmitting.

6        Although in most instances the user of the portable device and the service provider will be different, nothing precludes them from being one person.

network. The service is offered only through AT&T. When this service is utilized on an Apple iPhone (through AT&T) it is referred to as "MusicID". When this service is utilized on other phones, such as LG and Samsung phones, it is referred to as "MusicID 2". AT&T offers to sell and sells this service. (Ex. A). Apple and Napster obtain revenue from this service when identified music is purchased from Apple iTunes or Napster (which is the subject of claim 2 of the patent).

Gracenote is the owner of the "front end" software that can either be downloaded through AT&T, Gracenote or Apple iTunes[7] and used on a consumer's mobile phone for music identification, or is embedded on phones from LG or Samsung before a consumer purchases the phone from AT&T. (Ex. B and C). Users are given specific instructions on the use of the Gracenote music identification system, much of which is automated. Gracenote only gives a user of the music identification service a non-exclusive license that Gracenote can terminate. (Ex. D). Gracenote maintains all ownership rights in the software. Thus, Gracenote maintains complete control of the software on the user's phone. It is believed that the software that identifies segments of music cannot be used with any other music identification system on the market.[8] In other words, these defendants provide the ultimate end user of the Gracenote music identification service with every "tool" needed to work with the Gracenote service to perform the claimed infringement.[9]

On July 10, 2009, Tune Hunter filed its First Amended Complaint For Patent Infringement ("FAC"). The FAC tracks Form 18 appended to the Federal Rules of Civil Procedure. The FAC

---

[7]     The Gracenote MusicID application for the iPhone/iTouch is available from Apple's Application Store online.

[8]     For instance, one of Gracenote's competitors is Shazam (formerly a defendant in this case). Tune Hunter understands that the Gracenote music identification software on a cellular handset does not use the Shazam system.

[9]     This information is a brief statement of facts to assist the Court in understanding the control maintained by Gracenote. It is not intended to be an exhaustive statement of facts related to the "direction and control" test, although it establishes that Tune Hunter's allegations are more than plausible.

includes a statement of jurisdiction. FAC, ¶¶ 13-14. The FAC identifies the patent-in-suit as U.S. Patent No. 6,941,275 ("the '275 patent"), states its date of issuance, and title – "Music Identification System." *Id.*, ¶ 18. The FAC also attached a copy of the '275 patent as Exhibit A. *Id.* The FAC alleges that Tune Hunter is the owner of all right, title and interest in and to the '275 patent. *Id.* The FAC alleges that "the defendants [including Gracenote], either alone or in conjunction with others, have in the past and continue to infringe, contribute to infringement, and or induce infringement of the '275 patent . . . by making, using, selling, offering to sell and/or importing, and/or causing others to make, use, sell, offer to sell and/or import, and/or supplying or causing to be supplied in or from the United States, and/or importing into the United States, music identification systems, devices, products, and/or components thereof that embody, are made by and/or are covered by, in whole or in part, one or more of the claims of the '275 patent." *Id.*, ¶ 20[10] The FAC further alleges that Gracenote is liable for infringement of the '275 patent pursuant to 35 U.S.C. § 271. *Id.*, ¶ 21. The FAC prays for entry of judgment that Gracenote has infringed the '275 patent, an award of damages for such infringement against Gracenote, entry of injunctive relief against Gracenote, and an award of interest, costs and attorneys fees against Gracenote. *Id.*, ¶¶ A-H. There is nothing conspicuously absent in this complaint.

Gracenote's motion only addresses the implications of *BMC's* impact on the "use" act of direct infringement. In other words, Gracenote's motion does not address in detail Tune Hunter's other allegations of direct infringement under 271(g) and 271(a).[11]

---

10    These allegations paraphrase several acts of direct infringement under 35 U.S.C. § 271(a) and (g), namely: making, using, selling, and/or offering to sell under § 271(a) and offers to sell, sales or using a product made by the patented process under § 271(g). It also identifies what is accused – music identification systems, devices, products and components.

11    Gracenote does, however, give "passing" mention of 271(g) apparently as an afterthought, without any detailed analysis in footnote 8 of its Amended Motion. As explained in Section III. C., Tune Hunter has alleged meritorious claims of direct infringement under § 271(g).

# III.     ARGUMENT

## A.     Tune Hunter's Complaint Meets the Requisite Standards and Forms of The Federal Rules of Civil Procedure

### 1.     Motions To Dismiss For Failure To State A Claim Are Viewed With Disfavor And Rarely Granted

The level of specificity required in pleading a cause of action is not onerous.  As provided by Federal Rule of Civil Procedure 8(a), a complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  F.R.C.P. 8(a)(2).  12(b)(6) motions are governed by regional circuit law.  *See*, *e.g.*, *General Mills, Inc. v. Kraft Foods Global, Inc.*, 487 F.3d 1368, 1373 (Fed. Cir. 2007).

The Fifth Circuit disfavors motions to dismiss under Rule 12(b)(6) and follows a very high standard for granting them.  Gracenote has not met this standard.  "This initial pleading, which is required only to give notice of the claim, must be construed liberally so as to do substantial justice." *U.S. v. Uvalde Consol. Independent Sch. Dist.*, 625 F.2d 547, 549 (5th Cir. 1980).  Tune Hunter's Amended Complaint gives such notice, and as Gracenote recognizes, goes further by specifying acts of infringement under § 271(a) and (g).  The Amended Complaint also identifies what is accused – music identification systems, devices, products and components.  Gracenote does not contend that it lacks fair notice; instead it seeks Tune Hunter's contentions and proof.[12]

In deciding a 12(b)(6) motion, a complaint "must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true".  *WIAV Networks, LLC v. 3Com Corp.,* (E.D. Tex. 5:09-CV-101, Dec. 12, 2009).  Gracenote refuses to accept Tune Hunter's allegations in the complaint, and all reasonable inferences in favor of Tune Hunter, but instead

---

12      Gracenote does not contend that it cannot answer the allegations in the amended complaint.

argues that Tune Hunter will not be able to prove its case.[13]  The issue is not whether a plaintiff will

ultimately prevail; but whether the claimant is entitled to offer evidence to support the claims.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scherer*, 468

U.S. 183 (1984).  Finally, whereas the pleading standard is quite low, the standard for succeeding on

a motion to dismiss for failure to state a claim is quite high.  In that regard, it is well-settled that a

motion to dismiss for failure to state a claim is ***viewed with disfavor*** and ***rarely granted***.  *Kaiser*

*Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert.*

*denied*, 459 U.S. 1105 (1983).[14]  Gracenote knows that Tune Hunter is alleging acts of direct

infringement (either alone or jointly) and indirect infringement.  Gracenote knows it provides the

music identification software on cellular handsets (as do AT&T, LG and Samsung).  Gracenote

knows it maintains complete control and ownership of the software.  Gracenote has failed to meet

the high standard for dismissal under Rule 12(b)(6), and its motion should be denied.

### 2.    Tune Hunter's Complaint Complies With The Pleading Standard For Patent Cases Under Rule 8 And Form 18

Gracenote's motion to dismiss should be denied because Tune Hunter's complaint complies

with the standard set forth in Form 18, appended to the Federal Rules of Civil Procedure.  The

pleading requirements laid out in the Federal Rules merely require "a short, plain statement of the

claim showing that the pleader is entitled to relief."  F.R.C.P. 8(a); *see also Erickson v. Pardus*, 551

---

13    Illustrative of this point are the following arguments made by Gracenote: "To prevail on a theory of joint infringement…" (Amended Motion, p. 6) and "Plaintiff must prove 'control or direction'…" (Amended Motion, p. 10).  Obviously the present motion practice is not the place to require Tune Hunter to "prove" its case.

14    *See also OLA, LLC v. Builder Homesite, Inc*., 2009 U.S. Dist. LEXIS 89766, *8 (E.D.Tex. Sep. 29, 2009) (citing *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 231 (5th Cir. 2009)); *FotoMedia Tech., LLC v. AOL, LLC*, 2008 U.S. Dist. LEXIS 109403, *5 (E.D.Tex. Aug. 28, 2008) (noting in a patent case that 12(b)(6) motions to dismiss are disfavored); *Harrington v. State Farm Fire & Cas. Co*., 563 F.3d 141, 147 (5th Cir. 2009) (stating that motions to dismiss are disfavored and rarely granted).

U.S. 89 (2007) (noting that all that is required is that the pleading give "the defendant fair notice of what the . . . claim is and the grounds upon which it rests.")  Tune Hunter's complaint provides simple, concise, and direct allegations of Gracenote's infringement of the '275 patent, as required by the Federal Rules.  More specifically, Tune Hunter's complaint gives notice that Tune Hunter contends that several, distinct claims of infringement shall be made in this case.[15]  Tune Hunter also specifies that defendants' music identification systems, devices, products and components are at issue here.

As Rule 84 states, the "forms in the Appendix [to the Federal Rules] *suffice under these rules and illustrate the brevity that these rules contemplate.*"  *See* F.R.C.P. 84 (emphasis added). Moreover, as stated in Rule 8(d), "[e]ach allegation must be simple, concise, and direct.  *No technical form is required.*"  *See* F.R.C.P. 8(d) (emphasis added).  The Federal Circuit has concluded that compliance with Form 18 (formerly Form 16) is sufficient to withstand a motion to dismiss for failure to state a claim.  *McZeal v. Sprint Nextel Corporation*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). Indeed, the genesis of Gracenote's argument – *Bell Atlantic Corp. v Twombly*, 550 U.S. 544 (2007) – was a complex antitrust case in which the Federal Rule of Civil Procedure did not have a form complaint.

Gracenote's motion to dismiss is a misguided attempt to rewrite the longstanding pleading standard for patent infringement complaints as laid out in the Federal Rules and abrogate the Federal Rules by adding a heightened pleading requirement to patent cases.  As acknowledged by the Supreme Court, the courts are not permitted to amend the Federal Rules through judicial interpretation.  *Leatherman v. Tarrant Cty. Narc. Intell. & Coord. Unit*, 507 U.S. 163, 168 (1993) ("But [rewriting Rule 8] is a result which must be obtained by the process of amending the Federal

---

15    These theories will be disclosed more specifically in Tune Hunter's P.R. 3-1 disclosures.

Rules, and not by judicial interpretation."); *CBT Flint Partners, LLC v. Goodmail Sys., Inc.*, 529 F. Supp. 2d 1376, 1380 (N.D. Ga. 2007) (discussing *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544 (2007), and noting "As a general matter, I am loathe to assume that the Supreme Court … circumvented the normal channels for amending the Federal Rules").

Decisions from this district, such as *WAIV Networks* and *PA Advisors, LLC v. Google Inc*., 2:07-CV-480 (E.D. Texas August 7, 2008), recognize the interplay of this Court's Local Patent Rules and the brevity of an acceptable complaint – an allegation of ownership, name(s) of the defendant(s), citation to the patent, a brief description of the means by which the defendants infringe and reference to the applicable section of patent law. Gracenote does not contest that Tune Hunter has done so. Gracenote did not cite either of these cases and instead characterizes the Federal Circuit's decision in *McZeal* as only applicable to pro se plaintiffs. *PA Advisors* and *WIAV* both establish Gracenote's logic is not correct. (*PA Advisors* at pp. 10-11 and *WIAV* at pp. 5-6); *see also Fotomedia Tech., LLC v. AOL, LLC,* 2008 U.S. Dist. LEXIS 109403 (E.D. Tex. 2008).

Courts in this district have specifically noted on a number of occasions that patent infringement actions are *not* subject to any heightened pleading requirements or any particular technical form. This is directly in contradiction to Gracenote's suggestion that Tune Hunter must follow some other courts' technical approach to pleading its patent infringement claim. For example, in *FotoMedia*, the court stated that "[i]n a patent infringement case, a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." 2008 U.S. Dist. LEXIS 109403, *5 (citing *McZeal*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)); *see also Tyco Healthcare Group LP v. E-Z-EM, Inc.*, 2009 U.S. Dist. LEXIS 85104, *5 (E.D.Tex. Sep. 17, 2009); *see also Lowe v. Eltan B.V.*, 2006 U.S. Dist. LEXIS 97687, *25 (E.D.Tex. Mar. 27, 2006) ("A complaint is sufficient if it gives defendant fair notice of what the plaintiff's claim is and the grounds

upon which it rests.")  Gracenote's motion makes it obvious that it knows what to defend.

As noted above, Tune Hunter provided Gracenote with "a short, plain statement" of its patent infringement claim.  F.R.C.P. 8(a).  Tune Hunter clearly put Gracenote on notice of Tune Hunter's claim against it.  Noteworthy here, Gracenote does not argue that if Tune Hunter had a theory of direct infringement, that Tune Hunter should have replied with more specificity.  And since Tune Hunter does have such claims, no lengthy pleading is necessary or required.  Gracenote's attempt to hold Tune Hunter to some undefined heightened pleading requirement is misplaced, as no such heightened requirements exist in the Fifth Circuit.  In fact, Gracenote can only cite to three district court cases – *none of which are from this Circuit* – to support argument of heightened pleadings in patent cases.   This Court should reject Gracenote's attempt to introduce heightened pleadings standards for patent cases, and it should reject Gracenote's efforts to amend the Federal Rules to require technical pleading.  Because Tune Hunter's FAC complies with the Federal Rules and Form 18, Gracenote's motion should be denied.

> **3.    Gracenote's Reliance On Cases That Apply A Heightened Pleading Standard Are Not Applicable Since This Court Has Patent Rules**

Gracenote's relies on three district court cases that impose the *BMC* and *Muniauction* standard on motions to dismiss under Rule 12(b)(6): *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F.Supp.2d 1331 (S.D.Fla. 2008), *aff'd per curium* 318 Fed. Appx. 908 (Fed. Cir. 2009) (without opinion); *The Friday Group v. Ticketmaster*, 2008 U.S. Dist. LEXIS 100529 (E.D.Mo. Dec. 12, 2008); and *Desenberg v. Google, Inc.*, 2009 U.S. Dist. LEXIS 66122 (S.D.N.Y. Jul. 30, 2009).  Gracenote's reliance on these cases is misplaced, as the facts in each case are easily distinguishable and none apply Fifth Circuit law.

*Global Patent Holdings* was a case originating in the Southern District of Florida that involved a 12(b)(6) motion to dismiss.  The *Global Patent Holdings* court found that the plaintiff's

complaint failed to state a claim and that because plaintiff represented that leave to amend would be futile, it dismissed the action. However, the facts in the *Global Patent Holdings* case are distinguishable from those here. Notably, the Southern District of Florida does not have local patent rules in place to ensure the prompt disclosure of <u>material, relevant contentions and evidence</u>. *The Friday Group* and *Google* district court decisions contain the same crucial distinction. Neither the Eastern District of Missouri, nor the Southern District of New York has local patent rules for the prompt disclosure of relevant information and contentions.

The Eastern District of Texas, on the other hand, does have rules to ensure that information, including the infringement contentions that Gracenote claims that Tune Hunter's FAC lacks, are disclosed quickly and efficiently. *See*, *e.g.*, Local Patent Rule 3-1 (calling for the prompt disclosure of asserted claims and infringement contentions.) Although *WIAV* and *PA Advisors* did not address joint direct infringement, both of the decisions highlight the brevity required in a complaint and its interplay with the detailed infringement contentions contemplated by this Court's Local Patent Rule 3-1. "Thus, the infringement contentions – not the complaint – must provide the information [defendant] seeks regarding how its accused product allegedly infringes the asserted claims." *WIAV* at p. 5, footnote 1. Tune Hunter's complaint meets the standards set forth by the Rules of Procedure and Form 18. Defendants will obtain more detailed contentions through the Local Patent Rules. Gracenote's motion should therefore be denied.

### B. Tune Hunter Has Meritorious Claims Of Joint Direct Infringement

#### 1. Gracenote's Dispute That Tune Hunter Will Not Be Able To Prove Joint Direct Infringement Is Incorrect

Gracenote asserts the "control or direction" test is an "exacting" one requiring that the direct infringer be vicariously liable for the acts of others (Gracenote Motion, p. 1.). This skews the applicable legal principles. Further, Gracenote fails to recognize vicarious liability is not the only

way to show direction and control. In *Emtel, Inc. v. Lipidlabs, Inc*., 583 F. Supp. 2d 811 (S.D. Tex. 2008), the court analyzed *Muniauction* and recognized that a "spectrum" of multiparty relationships may exist:

> "At one end is "mere arms-length cooperation," which is found insufficient to establish infringement. At the other end is "control or direction over the entire process such that every step is attributable to the controlling part, i.e., the mastermind," which is sufficient to establish infringement. 533 F.3d at 1329. The outcome of applying the direction or control standard depends on where on this spectrum a particular case falls.

*Emtel, Inc*., 583 E. Supp. 2d. at 829. The *Emtel* court stated that "the third party must perform the steps of the patented process by virtue of a contractual obligation or other relationship that gives rise to vicarious liability."[16] And because ownership brings control, where a mastermind maintains ownership and has the capacity to revoke a customer's rights (such as a license), there is complete control.

Gracenote argues "[m]erely providing information or instructions to the other party, prompting the other party, or facilitating or arranging for the other party's involvement in the alleged infringement will not suffice," citing this Court's decision in *Golden Hour Data Sys., Inc. v. Emschart, Inc.* 91USPQ. 2d 1565 (E.D. Tex 2009). *Golden Hour* is easily distinguishable from this case. *Golden Hour* was not a 12(b)(6) decision. Nor has Gracenote "merely" provided information to the other party. Gracenote developed the software used in the "front end" device of the user. Gracenote also maintains ownership of the software, places requirements and restrictions on its use and the user, and can revoke its license.

---

16      *Emtel* further stated: *Global Patent* and *Rowe* make clear that to raise a fact issue as to direct infringement under the direction-or-control standard, the alleged infringer must cause third parties to perform steps of the claimed method in accordance with specific instructions and requirements. There was not only a contract in *Rowe*, but a contract that imposed specific instructions and requirements on how the third party was to perform the steps necessary for infringement. *Emtel*. at 834. Gracenote provides specific instructions for the use of its music recognition service and places specific requirements on users of its service.

Likewise, although *Muniauction* is well cited for the "direction and control" principle, its facts were also substantially (and significantly) different. In that case, the step performed by the bidder was the use of a conventional web browser. The other steps were performed by a proprietary system of the defendant. *MuniAuction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1323 (Fed. Cir. 2008). Here, the device provided to the user uses Gracenote's proprietary MusicID software – a far cry from *Muniauction's* facts.[17] Thus, a user's action can hardly be said to be "independent." As set forth above, Gracenote retains complete control and ownership of the software provided to an end user for use in the infringing system. If Gracenote wishes to fight the battle of proof, its present motion is not the vehicle to do so.

### 2.      *BMC and Muniauction* Only Apply to the "Use" Prong of §271(a)

Even if Gracenote was correct in asserting that Tune Hunter should plead "control and direction" more specifically under *BMC* and *Muniauction,* this requirement would only apply to the "use" prong of § 271(a). Gracenote does not argue that Tune Hunter would have to plead claims of infringement against Gracenote under the "offers to sell" and "sells" prongs of § 271(a) more specifically. *See* 35 U.S.C. § 271(a) ("whoever without authority makes, uses, *offers to sell, or sells* any patented invention, within the United States….infringes the patent.") (emphasis added).

Gracenote recognizes that the *BMC* line of cases address the direct act of infringement by the use of the method – a "single actor <u>perform</u> each and every step of the claimed process or otherwise exercise 'control or direction' over process steps <u>performed</u> by others." (Motion at 1, underline added); *see also BMC*, 498 F.3d at 1380-82. However, *BMC* and *Muniauction* do not address the other direct acts of infringement – namely the sale and offer to sell of the method under § 271(a). In

---

17      *Global Patent Holding* is similarly distinguishable. In that case, the patented method did not begin until the user took some independent action. Here, it begins with action by one or more of the defendants providing a portable communication device to be used by a consumer.

this case, Tune Hunter also alleges that offers to sell and sales of the accused service (method) have occurred.  FAC, ¶20.

The *BMC* and *Muniauction* cases relied upon by Gracenote do not address or apply to these claims and do not foreclose such claims.  Tune Hunter therefore has valid claims under the "offers to sell" and "sells" prongs of § 271(a) regardless of *BMC/Muniauction's* affect on the "use" of a method.  This is yet another reason that Gracenote's motion to dismiss should be denied.

### 3. Gracenote Understands That Tune Hunter Alleges Joint Direct Infringement, But Disagrees That Tune Hunter Will Prevail On The Evidence

Gracenote makes much of the direction and control standard set forth in *BMC* and *Muniauction*, but conveniently glosses over the fact that Tune Hunter *did*, in fact, plead that Gracenote acted with others to perform the steps of the '275 patent.  (Amended Motion at p.10).  Tune Hunter should be allowed to present its evidence on this point.

Gracenote acknowledges that Tune Hunter pled that Gracenote acted in conjunction with others, yet Gracenote argues that "[i]t is simply not enough that Defendant Gracenote, 'in conjunction with others,' perform all of the steps of the '275 patent claims." *Id*.  In other words, Gracenote disagrees that Tune Hunter will prevail on the merits.  Gracenote does not further elaborate on *why* this allegation is "not enough" for it to defend itself – especially when it is in possession of much of the documents that may relate to this issue – but rather goes on to refer to cases that are inapplicable to this action for various reasons.  *See* Section A.3, above.

Tune Hunter's pleading that Gracenote acted "in conjunction with others" in its infringement of the '275 patent necessarily pleads joint infringement – otherwise this phrase would have no meaning.  Rule 8(e) of the Federal Rules requires that courts construe the "pleadings … so as to do justice."  F.R.C.P. 8(e).  It would do no justice here to construe a portion of Tune Hunter's pleadings

to be meaningless.

Moreover, Gracenote has not supplied any evidence (beyond mere conclusory allegations) that it does not direct or control the actions of others in its infringement of the Tune Hunter patent. As discussed above, if Gracenote *does* have such evidence, it would come out naturally during the course of this litigation, due to the Local Patent Rules. The arguments and evidence herein show that Tune Hunter's claims raise fact issues relevant to the direction or control test.[18]

### C. Tune Hunter Also Has Claims of Direct Infringement Under § 271 That Do Not Require Joint Direct Infringement

In addition to asserting a claim for direct infringement by a single actor, Tune Hunter also has asserted a claim for direct infringement under 35 U.S.C. § 271 (g).

### 1. There Is *Direct* Infringement Under 35 U.S.C. § 271(g)

At the very least, consumers, Apple & Napster directly infringe the '275 patent claims under 35 U.S.C. § 271(g), as Tune Hunter alleged in its Amended Complaint. Gracenote devotes two sentences in a footnote to an argument that there is no infringement under § 271(g). (Amended Motion at p.12, n. 8). Despite the fact that such an argument requires that the claims of the '275 patent be construed – which is beyond the inquiry here – Gracenote *is* an infringer under § 271(g).

### 2. Standard for Direct Infringement Under § 271(g)

Under § 271(g), liability is imposed whenever a party "without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States." 35 U.S.C. § 271(g). The product in question cannot have

---

18    Indeed, even had Gracenote presented *any* evidence that Tune Hunter's allegations are incorrect, for purposes of this motion, this court must accept as true all Tune Hunter's factual allegations in the complaint and draw all reasonable inferences in favor of plaintiff. *See Capital Parks*, 30 F.3d at 629. Moreover, as noted above, the issue at this stage of the litigation is not whether Tune Hunter will ultimately prevail on its aims, but whether it is entitled to offer evidence to support its claims. *See Scheuer*, 416 U.S. at 236.

been "materially changed by subsequent processes," or become "a trivial and nonessential component of another product." *Id.* A showing of infringement under § 271(g) requires the patent-holder to prove: (1) that the item in question is a product made by a process patented in the United States, and (2) that the product does not fall under either the material change or trivial and nonessential component exceptions to § 271(g). *Ormco Corp. v. Align Tech., Inc.*, 609 F.Supp. 2d 1057, 1076 (C.D.Cal. 2009).

Gracenote concludes, with little in the way of argument, that the '275 patent's claims "are not process claims for the manufacture of a product." (Motion at p.12, n.8). The Federal Circuit has interpreted the term "product" to mean "physical article." *See Bayer AG v. Housey Pharmaceuticals, Inc.*, 340 F.3d 1367, 1377 (Fed. Cir. 2003). The term "[p]hysical article" does <u>not</u> exclude something contained in an electronic format. *See Ormco*, 606 F.Supp. 2d at 1076-77. Data files and electronic catalogs have been found to be "products" for purposes of § 271(g). *See*, *e.g.*, *Ormco*, 609 F.Supp. 2d at 1076; *see also CNET Networks, Inc. v. Etilize, Inc.*, 528 F. Supp. 2d 985, 994 (N.D.Cal. 2007).

In *CNET*, the court considered whether an electronic catalog was a "product" under § 271(g) and held that an electronic catalog was a product. *Id.* at 992-94. The court found that "the catalog, *i.e. the data file*," is in fact a product because the file is downloaded onto the local hard drives of users' computers. *Id.* (emphasis added). The court noted that "an electronic catalog, like computer software, is not simply an intangible collection of information, but can also be thought of as having a physical, tangible embodiment once it is expressed and stored on computer readable media." *Id.* ("In other words, the electronic catalog in this case, far from being abstract information or knowledge, is a physical article no different from a product catalog manufactured and assembled on paper bound with stitching, glue or staples.") The court held that the electronic catalogs at issue

were "products" within the meaning of § 271(g) and were "made" by the patented process. *Id*.

Likewise, the court in *Ormco* analyzed the definition of "product." *Ormco*, 609 F.Supp. 2d at 1076. *Ormco* involved a suit over infringement of a patent covering a method to automatically design and manufacture an orthodontic appliance based on data representing a patient's teeth. *Id*. The court held that a 3D digital model contained in an electronic file was "not a mere package of information, but a 'creation' produced by 'practicing each step' of [the] patented process.") *Id*. The court also took note of the fact that whether the 3D models were actually bought and sold as a final product was irrelevant. *Id*. ("[§ 271(g)] does not require a 'product' to be sold at all, as [§ 271(g)] explicitly provides for liability if the product at issue is sold *or* imported or used.") (emphasis in original). Accordingly, despite the fact that the 3D models at issue were "not tangible, and [were] contained as a data file," they were "products made under § 271(g)." *Id*.

As with the patents at issue in *CNET* and *Ormco*, the '275 patented processes create or manufacture an electronic file (*i.e.* "computer readable media") containing a song identification and a compilation of other details on a consumer's device. And when a song that has been identified is purchased and downloaded to the consumer's handset or computer, it is also an example of another product. The claims in Tune Hunter's patent, like the claims in *CNET*, are therefore "directed toward creation of a product … stored on computer readable media." *Id*. Also, as in *Ormco*, the electronic file in which the song identification is stored is "created" by "practicing each step of [the] patented process." *Ormco*, 609 F.Supp. 2d at 1076. *Id*. Accordingly, the method of the '275 patent is directed to the creation of a product.

Because the process of the '275 patent is directed to the creation of a product, Tune Hunter has a § 271(g) claim.

## IV.  CONCLUSION

Tune Hunter's FAC unquestionably complies with Form 18 and with Rule 8 of the Federal Rules of Civil Procedure.  The cases to which Gracenote cites in an effort to raise this district's pleading standard in patent cases are not binding precedent here.  Despite this, Tune Hunter's Amended Complaint *does* adequately plead infringement, including joint infringement.  Moreover, Gracenote's reliance on the *BMC* and *Muniauction* line of cases is misplaced, as Tune Hunter has viable claims of infringement under the "offers to sell" and "sells" prongs of § 271(a), as well as claims of infringement under § 271(g).  For all of the reasons stated herein, Gracenote's motion to dismiss should be denied.  Alternatively, Tune Hunter requests the opportunity to file an amended complaint with the specificity that the Court deems appropriate.[19]

Respectfully submitted,

Dated:  January 15, 2010                By: /s/ John T. Polasek
                                        John T. Polasek
                                        State Bar. No. 16088590
                                        tpolasek@pqelaw.com
                                        C. Dale Quisenberry
                                        State Bar No. 24005040
                                        dquisenberry@pqelaw.com
                                        Jeffrey S. David
                                        State Bar No. 24053171
                                        jdavid@pqelaw.com
                                        POLASEK, QUISENBERRY & ERRINGTON, L.L.P.
                                        6750 West Loop South, Suite 920
                                        Bellaire, Texas 77401
                                        Telephone: (832) 778-6000
                                        Facsimile: (832) 778-6010

---

19     As set forth in the title to this Opposition, this Opposition is also in response to AT&T, Napster, Samsung and Apple's Motions to Dismiss which purport to incorporate Gracenote's motion.  For the reasons set forth herein, and in Tune Hunter's Opposition to LG's Motion, each of the defendants' motions should be denied.  It is noted that Pantech has not filed a motion to dismiss, but simply a Notice of Joinder in Gracenote's (and LG's) motion(s).

S. Calvin Capshaw
State Bar No. 03783900
ccapshaw@capshawlaw.com
Elizabeth L. DeRieux
State Bar No. 05770585
ederieux@capshawlaw.com
CAPSHAW DERIEUX, L.L.P.
1127 Judson Road, Suite 220
P.O. Box 3999
Longview, Texas 75601-5157
Telephone: (903) 236-9800
Facsimile: (903) 236-8787

Robert Christopher Bunt
State Bar No. 00787165
rcbunt@pbatyler.com
Charles L. Ainsworth
State Bar No. 00783521
charley@pbatyler.com
PARKER, BUNT & AINSWORTH, P.C.
100 East Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Facsimile: (903) 533-9687

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 15th day of January, 2010, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by, electronic mail, facsimile transmission and/or first class mail on this same date.

 /s/   John T. Polasek