**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **TUNE HUNTER INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,** *et al.***,**<br><br>*Defendants***.** | **CASE NO. 2:09-CV-00148-TJW**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS TUNE HUNTER, INC.'S AMENDED COMPLAINT**

As explained in the reply briefs submitted by defendants Gracenote, Inc. (Docket No. 108, hereafter "Gracenote's Reply") and LG Electronics USA, Inc. (Docket No. 109, hereafter "LG's Reply"), Plaintiff Tune Hunter Inc's' arguments in opposition to defendants' motions to dismiss[1] cannot overcome the fatal deficiencies in Tune Hunter's First Amended Complaint for Patent Infringement ("Amended Complaint"). To reduce duplicative briefing before the Court, defendant Apple Inc. ("Apple") hereby joins in, and incorporates as if fully set forth herein, the arguments advanced in Gracenote's Reply and in LG's Reply. Moreover, Tune Hunter's claim under 35 U.S.C. § 271(g)—the *only* infringement theory that Tune Hunter's opposition brief specifically mentions with respect to Apple (*see* Docket No. 104, at 1, 3, 14.)—fails as a matter of law for the following, additional reasons.

In support of its claim under section 271(g), Tune Hunter relies on the proposition that "data files and electronic catalogs have been found to be 'products' for purposes of § 271(g)." (Docket No. 105, at 10-11 (citing two California district court cases, *CNET Networks, Inc. v.*

---

[1] *See* Amended Motion to Dismiss for Failure to state a Claim by Gracenote, Inc. (Docket No. 67, hereafter "Gracenote's Motion to Dismiss"); LG Electronics USA, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 82, hereafter "LG's Motion to Dismiss").

**APPLE INC.'S REPLY IN SUPPORT OF
MOTIONS TO DISMISS AMENDED COMPLAINT**          1.

*Etilize, Inc.*, 528 F. Supp. 2d 985, 994 (N.D. Cal. 2007), and *Ormco Corp. v. Align Tech., Inc.*, 609 F. Supp. 2d 1057, 1076-77 (C.D. Cal. 2009); Docket No. 104, at 15-16 (same)).  However, the issue here is not whether a "data file" or "electronic catalog" might, in some circumstances, be a product made by a claimed method under section 271(g).  The fatal flaw in Tune Hunter's patent claims is that they do not claim a method for creating or manufacturing ***any*** product, whether physical, electronic or otherwise.

In distinguishing the Federal Circuit's holding in *Bayer AG v. Housey Pharmaceuticals, Inc.*, 340 F.3d 1367 (Fed Cir. 2003), the district courts in both *CNET Networks* and *Ormco* made clear that a product "made by" a process under section 271(g) must be the direct result of "practicing each step" of the method:

> Unlike *Bayer*, where the patented process was not used in the actual manufacture of the drug, the patented process in this case is directly used to manufacture the catalog.  In other words, while practicing each step of the research method in *Bayer* did not lead to the creation of a drug, practicing each step of the method in this case leads directly to the creation of a catalog.

*CNET Networks*, 528 F. Supp. 2d at 993; *see also Ormco*, 609 F. Supp. 2d at 1076 ("Like the catalog in *CNET Networks*, the 3D digital model is not a mere package of information, but a 'creation' produced by 'practicing each step' of a patented process").  By their express, plain language, Tune Hunter's claims are methods or processes for "identifying music" (claim 1) or "purchasing a music item" (claim 2), in which certain "information" is exchanged.  In stark contrast, the claims at issue in *CNET* were explicitly directed to "creating" or "manufacturing" something.  *See CNET Networks*, 528 F. Supp. 2d at 993 (claims directed to "a method or system for creating a product catalog"); *see also Ormco*, 609 F. Supp. 2d at 1061 (patent directed at "'a system and method by which an orthodontic appliance is automatically designed and manufactured from digital low jaw and tooth shape data,'" which "involves scanning a model of the patient's mouth to 'produce two or three dimensional images and digitizing contours of selected points'").

Because the "information" and "music" mentioned in certain elements of Tune Hunter's method claims are not "created" or "manufactured" by "practicing each step" of the claimed

APPLE INC.'S REPLY IN SUPPORT OF
MOTIONS TO DISMISS AMENDED COMPLAINT            2.

methods, they cannot infringe under section 271(g).  Tune Hunter argues that the product purportedly made by the claimed methods is either: (1) an "electronic file" containing a "song identification" and other information; or (2) a "song" that has been "purchased and downloaded to the consumer's handset or computer."  (Docket No. 104, at 16; Docket No. 105, at 11[2]).  First, Tune Hunter's attempt to recast its claims as methods for "creating" an "electronic file" has no merit.  Claim 1 of the '275 patent is a "process of identifying music" in which only two of the claim's eight elements even mention generating or transmitting "database information regarding . . . at least one closest match."  '275 patent at 4:57-61 (elements (g)-(h)).  Tune Hunter seizes upon those two steps to argue that the entire claim is directed at "manufacturing" such database information (which Tune Hunter apparently contends is the "electronic file" containing a "song identification").  Elements (g) and (h), however, do not address how such information is "created" or what it must contain, and the remaining elements are not steps in the creation of any such information.[3]  Claim 2, similarly, is a "method for purchasing a music item" in which just

---

[2] As an initial matter, Tune Hunter appears to base its "product by process" arguments on portions of the '275 patent specification, without regard to the claim language.  (*See* Docket No. 105, at 11.)  In fact, the claims of the '275 patent do not mention either an "electronic file," a "song identification" or a "song."  (*See* Docket No. 45-1, hereafter, the "'275 patent" at 4:37 – 6:12.)  Presumably, Tune Hunter's arguments refer to (1) the "database information regarding . . . at least one closest match" mentioned in claim 1 and the "purchasing information . . . related to the music selection providing the closest match" mentioned in claim 2; and (2) the "music item selection" received by a consumer in claim 2.  As discussed further below, the claims simply are not methods for creating or manufacturing an "electronic file" *or* "database information" regarding a song or a music item selection.

[3] Claim 1 addresses steps in the "process of identifying music":

    a) providing a portable communication device to be used by a consumer;
    b) a service provider providing a music identification device having a database of prerecorded musical works;
    c) the consumer recording a segment of music that is audible to the consumer in a location remote from the music identification device using said portable communication device;
    d) the consumer transmitting said recorded musical segment from said portable communication device into a central processing unit of the music identification device;
    e) the music identification device analyzing and comparing said musical segment to the database of musical works; [and]
    f) the music identification device identifying at least one closest match;
    g) the music identification device generating database information regarding said at least one closest match; and
    h) the music identification device transmitting the database information regarding said at least one closest match to the consumer.

[Footnote continued on next page]

one of the claim's ten elements (element (h)) mentions a consumer receiving "purchasing information . . . related to the music selection providing the closest match."[4]  Second, Tune Hunter's argument that the method of claim 2 "manufactures" a "song" is also unavailing.  A method that culminates in a consumer merely "receiving said music item selection" is not a method in which practicing each step "creates" a song.

Finally, Tune Hunter's argument that claim construction is necessary to assess its claims under section 271(g) is also meritless.  Claim construction cannot change a "process of identifying music" or a "method for purchasing a music item" into a method for manufacturing a physical article.  *See Bayer AG*, 340 F.3d at 1377.  Similarly, Tune Hunter cannot rely on unspecified claim construction arguments to escape controlling Federal Circuit precedents, which hold that processes of "identification," or the "generation," "production" or "transmission" of "information," do not constitute "manufacturing" a "physical article" under

---

[Footnote continued from previous page]

   '275 patent at 4:37-62.

[4] Claim 2 addresses steps in the "method of purchasing a music item":

    a) providing a portable communication device to be used by a consumer that is listening to a source of audible music;
    b) a service provider providing a remotely located music identification/purchasing system having a database of prerecorded musical works;
    c) the consumer directing a microphone of the portable communication device toward the source of audible music;
    d) the consumer activating the portable communication device to transmit a segment of the audible music to the remotely located music identification/purchasing system;
    e) the music identification/purchasing system automatically entering said transmitted segment of music into a central processing unit of said music identification/purchasing system;
    f) the music identification/purchasing system automatically analyzing and comparing said transmitted segment of music to music contained in a music database; and
    g) the music identification/purchasing system automatically identifying a music selection providing the closest match from music contained in the music database to said transmitted segment of music;
    h) the consumer receiving purchasing information from said music identification/purchasing system related to the music selection providing the closest match;
    i) the consumer transmitting at least one music item selection and payment information to said music identification/purchasing system; and
    j) the consumer receiving said music item selection.

   '275 Patent at 4:63 – 6:12.

section 271(g) as a matter of law.  *Id*. at 1377-78; *NTP, Inc. v. Research in Motion, Ltd*., 418 F.3d 1282, 1323 (Fed. Cir. 2005).

For the reasons stated above and in Gracenote's and LG's Motions to Dismiss and Replies, Apple respectfully requests that the Court dismiss Tune Hunter's Amended Complaint, with prejudice, for failure to state a claim upon which relief can be granted.

February 8, 2010                                              Respectfully submitted,


                                                              By:_____*/s/ Josh Krevitt*_____

                                                              Josh Krevitt (NY # 2568228)
                                                              GIBSON, DUNN & CRUTCHER LLP
                                                              200 Park Avenue, 47th Floor
                                                              New York, New York  10166
                                                              Telephone:  (212) 351-4000
                                                              Facsimile:   (212) 351-4035
                                                              E-mail:  JKrevitt@gibsondunn.com

                                                              **ATTORNEYS FOR DEFENDANT APPLE, INC.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on this 8th day of February, 2010. Any other counsel of record will be served by first class U.S. mail on this same day.

                                                                                            */s/ Josh Krevitt*
                                                                                               Josh Krevitt